PEOPLE a. AMBRECHT.

*Supreme Court, Fifth District; At Chambers, before Hon. W. F. Allen, July,* 1859.

EJECTMENT.—PARTIES.

An action to recover the possession of lands must be brought against the tenant in possession, since as well as before the Revised Statutes.

A soldier of the United States, claiming to be in charge, under superior officers, of real property, as property of the United States, is not the actual occupant, and an action cannot be maintained against him.

Action of ejectment.

This action was brought to recover possession of part of the Old Fort Military and Parade Ground, in Oswego.

The premises in question, comprise part of the grounds which the United States government had claimed and occupied since 1839, as a military station, and within which grounds (but not comprising a part of the "*locus in quo*") is "Fort Ontario."

The defendant was an enlisted soldier of the United States, stationed at Fort Ontario, to take charge of personal property of the United States there stored, and had occupied a building in the fort for eight or ten days before the suit was commenced.

On the 25th of April, 1839, the Legislature of the State of New York, passed an act authorizing the commissioners of the land-office to convey to the United States the title of the State, to "*all* that part parcel of land lying near the mouth of the Oswego River, in Oswego county, known as the 'Old Fort

Military and Parade Ground.'" The act ceded jurisdiction to the United States over the land to be conveyed—such jurisdiction not to be construed to prevent or impede the execution of any process, civil or criminal, under the authority of the State, except so far as such process may affect the real or personal property of the United States within the said parcel of land.

A survey of the grounds was made by John McNair, city surveyor of Oswego, in July, 1839, and on the 15th of August, 1839, a patent was issued by the State to the United States, conveying the premises by the description of the " Old Fort Military and Parade Grounds," and by the boundaries given in McNair's survey.

On the 25th of June, 1851, the Legislature passed an act authorizing the commissioners of the land-office to grant to the city of Oswego the *land under water lying in front* of the land granted to the United States in the city of Oswego, between the east pier and the Cove property.

On the 20th of May, 1852, a patent was granted pursuant to that act, *the description of the inner line being copied from the patent to the United States.*

This action was brought by the State of New York in behalf of Gerret Smith, who claims under the patent to the city of Oswego.

The cause was referred, by order of the court at circuit, to Hon. W. F. Allen, and it was accordingly tried before him at chambers.

*L. Tremain*, attorney-general, for the plaintiffs.

*J. C. Spencer*, attorney for defendant.

W. F. ALLEN, J. (referee).—The action is brought to test the right of Mr. Gerret Smith, under a lease from the city of Oswego, to a narrow strip of land in the harbor of Oswego in front of " Fort Ontario," and which has been inclosed and claimed by the United States under a grant from the State, for the purpose of a military post and fortification. The grant to the United States was made in 1839, pursuant to an act of the Legislature, passed April 25th, of that year, to be used " for the purpose of re-establishing the military post, of rebuilding

the fort, redoubts, and barracks, and of improving the parade ground." The general government, by its officers and agents, took possession and erected a fort upon the premises claimed under the grant, and have occupied them as a military post up to the present time. For the purpose of protecting them against the action and encroachment of the water upon the river side, a sea-wall was built by the United States in front of the " fort property," but whether within the limits of the grant is one of the questions controverted : the claim being, on the one hand, that the wall is upon, or at least not beyond, the westerly bounds of the grant; and on the other, that it embraces within the fort grounds land not embraced in the grant, and included within the subsequent grant to the city of Oswego. In 1852, under a law of 1851, authorizing the commissioners of the land-office to grant to the city of Oswego " the land under water in front of land granted to the United States," a grant of land was made to the city of Oswego conterminous on the easterly side with the lands granted to the general government, which lands were soon thereafter leased by the city of Oswego, and the lease has come by assignment to Gerret Smith. The litigation grows out of a disputed boundary between those two grants. The defendant is an ordnance-sergeant of the army of the United States, appointed under the act of Congress of April 5, 1832 (4 *Stat. at Large*, 504), " to receive and preserve the ordnance, arms, and ammunition, and other military stores at the post." In the absence of troops and a commanding officer, he had charge of the whole post as ordnance-sergeant, and under the directions of the adjutant-general, Hammond, at " Fort Ontario," about the 1st of September, 1858, took charge, superseding his predecessor a few days after ; and on the 14th of September this action was commenced. He resides in quarters set aside for that purpose upon the fort grounds, and other families by permission from the proper source reside in the " officers' quarters," or dwelling-houses within the fort. The defendant, as well as the other residents within the " grounds," depasture their cows upon the premises, and the defendant testified that he cut the hay in case he wanted any, but had not at the time of the trial cut it. There is no proof that he was ever upon the disputed territory, or ever interfered in any way with the land claimed in this action, or obstructed or hindered

those claiming under the grant to the city of Oswego, from oc-
cupying or taking possession of all that they claimed. It is
objected that the defendant was not at the time of the com-
mencement of the action the " actual occupant" of the premises,
and was not, therefore, properly subject to an action of eject-
ment, for it is only as an " occupant" that the action will lie
against him. (2 *Rev. Stat.*, 304, § 4.) The general rule is that
in an action of tort all persons concerned in the wrong are
liable to be charged as principals. (Cranch *a.* White, 1 *Bing.
N. C.*, 414.) It was said, in Sands *a.* Clurd (3 *Lev.*, 352), that
" the warrant of no man, not even of the king himself, can
excuse the doing of an illegal act; for although the commanders
are trespassers, so are also the persons who did the act." (Guille
*a.* Swan, 19 *Johns.*, 381.) The command of a superior to do
an act which amounts to a trespass, is no justification to the
inferior. (Brown *a.* Howard, 14 *Ib.*, 119.) The dictum seems
to be modified in cases where the act of trespass is afterwards
adopted and ratified by the crown. (Burow *a.* Denman, 2
*Exch.*, 167.)

But while ejectment is an action *ex-delicto*,—the act com-
plained of being technically a trespass *quare clausum fregit*,
sounding in damages only,—and is a possessory action, and in
this State has taken the place of a real action, to try the "mere
right" to real property, it is in substance an action to recover
the possession of the premises, and must be brought against the
"wrongful occupant" of the land. (Goodryght *a.* Gorett, 7
*T. R.*, 327 ; *Brown on Parties*, 246.) Under the former
practice, before judgment could be taken against the casual
ejector, the declaration must have been served upon the "ten-
ant in possession," and service upon a person upon the premises
in any other capacity would not have sufficed. He was the
real party to the action, the one to be dispossessed by a judg-
ment in favor of the lessee of the plaintiff. Hence, upon a
recovery in an action defended by the landlord, the recovery
could only be had for the quantity of land in the possession of
the party served as the tenant in possession at the commence-
ment of the action. (Ferm *a.* Wood, 1 *B. & P.*, 573 ; Doe *a.*
Roe, 1 *Ch. R.*, 574.) The revisers in recommending, and the
Legislature in adopting the provisions of the Revised Statutes,
by which the proceedings in this action were greatly simplified,

and the real parties made to take the place of fictitious parties upon the record, did not intend to change the substance of the action. The revisers in their note say "they have carefully adhered to the leading principles of the action, so as to make little or no alteration except in the form of the proceedings." (3 *Rev. Stat.*, 3 ed., 707.) By "actual occupant," in designating the individual against whom the action might be brought, was intended no more than the "tenant in possession," as that term was used in the former practice. Occupant is he that has possession, one who has the actual use or possession of a thing. (*Webster's Dic.; Burrill's Law Dic., h. t.*) A tenant in possession is simply one who holds the land in possession or occupancy. Was, then, this defendant, this soldier, the "actual occupant," the "tenant in possession" of the lands granted by this State to the United States, and known as the "Fort Grounds?" for if so, he may be very properly treated as in possession of all the lands within the inclosure, and claimed and occupied by the United States for their special purposes, including the strip in dispute, although he may never have set his foot upon it, or exercised any control over it, and the action may be maintained against him, in case the plaintiffs establish their title. A person may occupy land, as he may do any other act, either in person or by an agent or servant, and in the latter case, the possession and occupation of the agent or servant will be that of the principal, and it cannot be at the same time the occupation of the servant.

A corporation aggregate, which can only act by its agents, can acquire a title by disseizin, and, as occupants or tenants in possession, be liable to an action of trespass and ejectment. (Doe *a.* Roe, 1 *A. & E. N. S.*, 700 ; Doane *a.* Broad-street Association, 6 *Mass.*, 332 ; Dexler *a.* Troy T. & R. R. Co., 2 *Hill*, 629 ; Bloodgood *a.* M. & H. R. R. Co., 18 *Wend.*, 9.) A tenant in possession may reside abroad and carry on his business by an agent residing on the premises, and the tenant, not the agent, will be the proper party-defendant in an action of ejectment. (Doe *a.* Roe, 4 *B. & Ald.*, 653.) The presumption is, that he who resides upon premises is the occupant or tenant in possession; but it is a mere presumption which must yield to evidence, and the question of possession is one of fact, to be determined upon all the evidence in the case. In an ac

tion of ejectment, brought against the defendants as trustees of a church, it was held to be a proper question for the jury whether the defendants were actually in possession, or only as trustees; in other words, to determine whether the defendants were in possession, or the corporation through them as its officers. (Lucas *a.* Johnson, 8 *Barb.*, 244.) Doe *a.* Staunton (1 *Chit.*, 118; same case somewhat differently reported, 2 *B. & Ald.*, 371) decides that a mere servant of the lawful occupier of an estate cannot be made a defendant in ejectment; but that when a servant in the visible occupation of premises, assumes the character of the tenant in possession, he is liable to be made defendant, and his conduct is evidence to go to the jury to presume that he is the tenant in possession, unless that fact is rebutted by other evidence. In that case the defendant, by his conduct and language, at the time of the service of the declaration, and subsequently, resisted the plaintiff. He did not explain the character of his occupation when he might have done so. BAYLEY, J., says: "If he had explained the true character of his occupation, he never could be liable to an action for mesne profits, unless his occupation was in the character of a tenant." Shaw *a.* McGrain (12 *Wend.*, 558), although not decisive, is somewhat to the point. It was there said, although it was not necessary to the decision, that when premises for which an action of ejectment is brought, are actually occupied and possessed, though by a mere servant, who claims no beneficial interest in them, and labors wholly for his employer, the action must be brought against such servant, and not against his principal. It was decided that when a party not in the actual occupation of premises, as distinguished from the exercise of acts of ownership, is found in the cultivation of, and working upon such premises, and an action of ejectment be brought against him, it is competent for him to show that he labors upon the premises as the mere servant of another; and if the jury find his allegation to be true, and that he is not the tenant of the premises, he is entitled to a verdict in his favor. Under what circumstances the learned judge would have deemed the mere servant the occupant and tenant in possession, and subjected him to the action of ejectment, and charged him with the mesne profits in exoneration of the principal and employer for whom he labored, does not appear. It cannot, I

think, be claimed under the intimation of Judge Sutherland, that a servant who occupies a dwelling or a farm, which is furnished as a part of the compensation for his services, and tilling the farm under the direction of an employer for monthly wages, exercising no control over the farm or its products, except in obedience to the commands of his employer, is an actual occupant of the farm in any sense of the term. Mesne profits may be recovered of the defendant, upon the recovery of a judgment by the plaintiff in an action of ejectment. (2 *Rev. Stat.*, 310, § 63, and seq.) And it is nowhere intimated that a party liable to the latter action, can be excused from liability for mesne profits by reason of the character of his occupation. It is not reasonable that there should be any distinction, and none is made by statute. In this case, there is no dispute as to the facts. The defendant never has had, or claimed to have, any interest in the occupancy or possession of the premises, or to have had any possession of them in any manner. The most that he had claimed is to be in charge, under his superior officers, of the property of the United States. He is a soldier in the army of the United States, having certain specific duties assigned him in and about Fort Ontario, and has quarters assigned him by the proper authorities for his residence within the fort grounds, but entirely away from the disputed strip of land. The premises, so far as they were occupied at all, were occupied by the United States.

The individuals in temporary command or charge, whether officers or soldiers, are mere servants, acting in obedience to the lawful commands of their superior officers, and all under authority of law and the general government. They are liable to be removed from the post or superseded in command at any moment, and are not occupants or tenants in possession of a single foot of the land which they may use, or be upon, in the discharge of their duties. For any wrongful act to the injury of the property of others, they are individually liable; and their character as soldiers, and the fact that they acted in obedience to the commands of their superiors, will not shield them.

Perhaps for a peaceable entry and detainer of the land of an individual, proceedings might be had under the act giving redress in such cases. (2 *Rev. Stat.*, 507.)

It is not necessary to consider that question. It is enough that the defendant in this action is not the occupant of the premises in dispute, and the action will not lie against him. If this objection were obviated, another difficulty would have to be met, that is if it be conceded, that upon a visible occupation in all respects like that of the defendant, except that he was acting for, and representing an individual instead of the government, an action of ejectment would lie against, and the possession of the premises recovered from him, and through him his principal might be ousted, it does not follow that the possession of the government can thus be lost. "As the United States are not suable of common right, the party who institutes such suit must bring his case within the authority of some act of Congress, or the court cannot exercise jurisdiction in it." (Per Chief-justice Marshall; United States a. Clark, 8 *Peters*, 463; and in Cohen a. Virginia, 6 *Wheat.*, 264.) Ejectment could not therefore be brought against the United States any more than an action of assumpsit, and it seems to follow that they cannot be indirectly sued in the person of their agents and officers, and the title and claim thus subjected by indirection to the jurisdiction of the State courts. In theory it is unreasonable, and in practice it might prove mischievous, by bringing the State and national sovereignty in conflict. The State by its militia would be bound to execute the power of its courts, and give possession in pursuance of a judgment in ejectment, while the United States might be disposed to retain possession of its fortifications and barracks by a resort to force if necessary.

Suppose that by the time judgment and a writ of possession should be awarded to the plaintiff, the defendant should be court-martialed or superseded, and a body of United States troops should occupy the fort, of what avail would the power of the State court, and the posse of the county, be to the plaintiff in obtaining possession of the premises? Certainly the judgment in an action against a soldier would not bind the United States, or estop them from claiming title in hostility to it.

But without pursuing the subject further, I am of the opinion that the defendant is entitled to judgment, on the ground that he was not, at the commencement of the action, the occupant of the premises.

Order entered accordingly.